**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID LEFFLER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **ANN & ROBERT H. LURIE** | ) | |
| **CHILDREN'S HOSPITAL OF** | ) | **Jury Trial Demanded** |
| **CHICAGO,** | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Plaintiff, David Leffler ("Leffler"), by his attorneys, Marc P. Trent of Trent Law Firm, P.C. hereby complain against Defendant Ann & Robert H. Lurie Children's Hospital of Chicago ("Hospital") as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief and for damages against the defendant to enforce the Plaintiff's rights to be free from race discrimination, discrimination on the basis of sexual orientation, retaliation, and to be free from subjugation to a hostile work environment as secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.)* ("Title VII").

## PARTIES

2.      Plaintiff Leffler is an adult, heterosexual, Caucasian male, approximately 46 years of age, and was at all times relevant a resident of the territorial jurisdiction of this District Court.

3.     Defendant Hospital is a non-profit corporation licensed to do business in the State of Illinois. At all times relevant, Hospital did business within the territorial jurisdiction of the District Court.

4.     On or about January 18, 2018, Leffler began employment with the Hospital as a Maintenance Engineer, Level II.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6.     Jurisdiction is also invoked pursuant to the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-3(a); 2000e—5(g)(1).

7.     Venue is proper under 28 U.S.C. § 1391 (b)(1) and (d) because the Defendant Hospital has a principal place of business in this judicial district and all of the acts and occurrence that give rise to this lawsuit took place in this judicial district.

8.     All jurisdictional prerequisites to a lawsuit under Title VII as well as the retaliation provision under said statute have been met, to wit:

a.     On October 19, 2021, Leffler filed a charge of discrimination under Title VII and the ADEA which was perfected by the Illinois Department of Human Rights ("Department") and by a work sharing agreement between the Department and the Equal Employment Opportunity Commission ("EEOC") was cross-filed and perfected at both agencies;

b.     The charge was filed at the Department as of October 19, 2021 (*see* Exh. A);

c.      The charge was perfected and stamped "received" by the IDHR and thus was perfected at both the IDHR and the EEOC on October 19, 2021 (*see* Exh. A);

d.      The charge was assigned EEOC Charge No. 440-2021-05694 (*see* Exh. A);

e.      The charge pursuant to the work-sharing agreement between agencies was filed within 300 days of the date of the last act of discrimination, retaliation and harassment, which was and were on-going through the date Leffler was terminated;

f.      Leffler received a Right-to-Sue letter from the EEOC dated October 26, 2021 (*see* Exh. B);

g.      This lawsuit is being filed within 90 days of the date of receipt of the Right-to-Sue letter (*see* Exh. B);

## **BACKGROUND**

9.      Plaintiff complains of continuous discrimination on the basis of race and sexual orientation that he experienced, and retaliation that he experienced, after he repeatedly complained beginning on or about April 2020 and continuing to March 2021.

10.     That on or about January 18, 2018, Hospital hired Leffler to work as a Maintenance Engineer. Other similarly situated employees were non-Caucasian and/or of a sexual orientation other than heterosexual.

11.     That during the course of Leffler's employment with Hospital, JASON FULLERTON ("Fullerton"), worked alongside Leffler at Hospital.

12.     Upon information and belief, Fullerton is a homosexual male.

13.     That in July 2019, Leffler displayed a United States flag conformant with the Flag Act of 1777, commonly referred to as a "Betsy Ross Flag", in his cubicle.

14.     That in July 2019, Leffler was ordered to remove his flag, along with several patriotic decals, after an alleged call to the "compliance hotline" reported Leffler's workspace as "offensive" and describing the United States flag as "associated with slavery."

15.     That on or around April 14, 2020, Leffler was engaged in a conversation regarding musical interests with another coworker when he was confronted by Fullerton, who then and there stated, without provocation "How did you know I was singing that on the way to work?" and continued in song "David Leffler lick my balls, David Leffler is a ball licker."

16.     That on or around the week of April 21, 2020, Leffler was working with dumbbells during his lunch break when he was approached by Fullerton, who demanded that Leffler explain "why he always has to be moving around" and "why he can't just sit still?"

17.     That on or around April 28, 2020, Leffler arrived to work at Hospital and engaged in separate conversations with two (2) coworkers, Jacob and Sean.

18.     Leffler first spoke with Jacob about the topical COVID-19 pandemic, the Presidential administration's response to the pandemic, and the coverage of said response by various popular news media outlets.

19.     During the course of said conversation, Leffler observed Fullerton eavesdropping.

20.     Leffler then was approached by Sean, who wished to speak with him about Christianity. The two spoke of various Christian topics, including the book of Revelation.

21.     During the course of said conversation, Leffler observed Fullerton eavesdropping.

22.     Following the conclusion of Leffler's conversation with Sean, Leffler returned to his desk and took his seat.

23.     Immediately following Leffler's return, he was approached by Fullerton.

24.     Fullerton then stated to Leffler, without provocation, "Don't think that people like you here, everyone talks about you behind your back," and "You've been here two years, you're no longer welcome, your time is up."

25.     Fullerton continued by berating Leffler for being "unreliable" and accused him of abusing narcotics.

26.     On or about April 2020, Leffler engaged in conversation with a coworker, DARIEN BURTON ("Burton") regarding a firearm Burton had recently purchased and Leffler had also previously owned.

27.     During said conversation, Leffler also mentioned his recent purchase of a bulletproof vest to Burton in the natural flow of their firearms-related conversation.

28.     While in the course of conversation, Burton and Leffler were interrupted by Fullerton, who had overheard their conversation.

29.     Fullerton proceeded to interject into the conversation and accuse Leffler of "having a list" of people Leffler wished to kill, and aggressively interrogating Leffler as to "why anyone would need a bulletproof vest."

30.     Immediately following this event, an anonymous "hotline report" was allegedly made complaining that Leffler spoke "aggressively" of firearms to another employee; that

Leffler was compiling a "kill list" and that the caller believed he was on it; and that Leffler was abusing narcotics.

31.     Following this report, Leffler was interviewed by TODD LARSON ("Larson") regarding the allegations made.

32.     During this conversation, Larson explained that he "understood" Leffler's position, and that he believed action was being taken against him because of the current political climate.

33.     During the Summer of 2020, a series of civil disturbances involving violence, looting, and damage to property occurred in Chicago and surrounding metropolitan areas stemming from protests organized by "Black Lives Matter" ("BLM").

34.     Upon information and belief, Larson referred to these events and their preceding incidents when describing the "current political climate."

35.     Throughout the Summer of 2020, employees of Hospital were required to complete a "check-in" procedure including temperature-taking and hand sanitizing to combat the spread of COVID-19.

36.     Hospital maintained a particular area with a table for employees to complete their check-in procedures.

37.     In the area designated for checking in, Hospital displayed a rainbow LGBT Pride Flag, and a basket of BLM buttons tfor employees to take and wear at their discretion.

38.     Throughout the Summer of 2020, other employees were permitted to pass out BLM stickers with the phrase "Black Lives Matter."

39.     Leffler dismissed allegations that he had a "hit list" as ridiculous, and explained that he and Burton were simply discussing their shared interest in firearms.

40.     Leffler continued to explain that he had been continually harassed by employees who supported the "Black Lives Matter movement," referring to him as a "racist," a "militia member," and a "white supremacist," among others.

41.     Leffler continued to complain to Larson that he was being harassed by Fullerton and subjected to inappropriate sexually-charged insults and comments.

42.     The interview concluded with no formal action taken, and Leffler was permitted to continue working without incident.

43.     On or around January 2021, Leffler was laterally transferred to an office in Lincoln Park to perform duties as a Maintenance Engineer.

44.     On or around February 4, 2021, Leffler had on display in his private office two (2) decals representing his political affiliations.

45.     On or around February 4, 2021, Leffler was ordered by PHIL ROMINSKI ("Rominski") to remove said decals because he believed them to be "associated with militia groups and white supremacy" and labeled them "offensive."

46.     On February 5, 2021, Leffler replaced his decals representing particular political groups with more generalized patriotic images, including the 1775 Gadsden flag with the words "Don't Tread on Me" inscribed, and a patch which recited the language of the 2nd Amendment and carried the tagline "The Original Homeland Security."

47.     On February 18, 2021, Leffler was interviewed by Human Resources, Security and Corporate Compliance regarding the above-referenced allegations.

48.     During said conversation, Leffler explained that he removed the decals as demanded by Rominski and replaced them with more general patriotic stickers.

49.     Leffler was told by Hospital that he could not display images of the 1775 Gadsden flag or images that contained the verbatim language of U.S. Const. Amend. II, as they were considered "offensive."

50.     On March 4, 2021, Leffler received a Letter of Termination from Hospital, which outlined his termination of employment (*see* Exh. C).

51.     Said letter alleges that "an employee also reported that [Leffler] states that individuals who identify as LGBTQ should not be permitted to serve in the military" but fails to identify when, how, or to whom this alleged conduct took place.

52.     During the course of Leffler's employment, Leffler received no disciplinary actions preceding his termination.

53.     During the course of Leffler's employment, he received several written and verbal commendations from doctors and other Hospital staffing for his outstanding performance.

54.     During the course of Leffler's employment, he performed all duties of his job description satisfactorily and to the standards and demands of Hospital.

55.     That on March 4, 2021, Leffler's employment as a Maintenance Engineer with Hospital was terminated without legitimate cause or reason.

56.     Leffler's termination was pretextual and in retaliation for Leffler's opposition to Hospital's actions described above.

## COUNT I
## TITLE VII Race Discrimination

57.     Plaintiff restates and realleges paragraphs 1 - 56 as if specifically set forth herein.

58.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race.

59.     Defendant violated 42 U.S.C. § 2000e-2(a) by treating Leffler differently than similarly situated African-American employees because of his race.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.      Award compensatory and punitive damages to the maximum amount provided by statute;

C.      Award all back pay lost since the date of terminated plus pre-judgment interest;

D.       Award attorney's fees, expert witness fees, and costs as provided by law;

E.      Award forward pay due to decrease in earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

## COUNT II
### Title VII Race Discrimination – Hostile Work Environment

60.     Plaintiff restates and realleges paragraphs 1 - 59 as if specifically set forth herein.

61.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race and affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

62.     Leffler belongs to a protected group.

63.     Leffler was repeatedly subjected to unwanted harassment based on his race as set forth above.

64.     Hospital knew and/or should have known of the harassment and failed to take prompt remedial action.

65.     At all times hereto, Leffler acted reasonably under the circumstances.

66.     Hospital is liable for the racial harassment due to a hostile work environment inflicted upon Leffler due to Hospital's violation of Title VII of the Civil Rights Act of 1964 as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.      Award attorney's fees, expert witness fees, and costs as provided by law;

E.      Award forward pay due to decrease in earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

## COUNT III
## TITLE VII Sexual Orientation

67.     Plaintiff restates and realleges paragraphs 1-66 as if specifically set forth herein.

68.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of sexual orientation.

69.     Defendant violated 42 U.S.C. § 2000e-2(a) by treating Leffler differently than similarly-situated homosexual employees because of his sexual orientation.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.      Award compensatory and punitive damages to the maximum amount provided by statute;

C.      Award all back pay lost since the date of termination plus pre-judgment interest;

D.      Award attorney's fees, expert witness fees, and costs as provided by law;

E.      Award forward pay due to decrease in earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

## COUNT IV
### Title VII Sexual Orientation – Hostile Work Environment

70.      Plaintiff restates and realleges paragraphs 1 - 69 as if specifically set forth herein.

71.      42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of sex and affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

72.      Leffler belongs to a protected group.

73.      Leffler was repeatedly subjected to unwanted discrimination and harassment based on his sexual orientation as set forth above.

74.      Hospital knew and/or should have known of the discrimination and failed to take prompt remedial action.

75.      At all times hereto, Leffler acted reasonably under the circumstances.

76.      Hospital is liable for discrimination on the basis of sexual orientation due to a hostile work environment inflicted upon Leffler due to Hospital's violation of Title VII of the Civil Rights Act of 1964 as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.     Award forward pay due to decrease in earnings;

F.     Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.     Grant such additional relief as this Court deems just and proper.

## COUNT V
## TITLE VII Retaliation

77.     Plaintiff restates and realleges paragraphs 1 - 76 as if specifically set forth herein..

78.     42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because he opposes any practice which is unlawful under Title VII.

79.     Leffler's opposition to Hospital's actions described above, is protected under 42 U.S.C. § 2000e-3(a).

80.     Hospital terminated Leffler's employment in retaliation for his protected conduct.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Find that Defendant discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.      Award forward pay due to decrease in lower earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this

Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,

*Marc P. Trent*

Marc P. Trent
An Attorney for Plaintiff

**Marc P. Trent**
**TRENT LAW FIRM, P.C.**
ARDC No. 6324928
1834 Walden Office Square
Suite 500
Schaumburg, IL 60173
(630) 682-3100
*service@trentlawfirm.com*

## ☐ED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **440-2021-05694** |

**ILLINOIS DEPARTMENT OF HUMAN RIGHTS** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MR. DAVID J LEFFLER** | **630-995-2805** | **1975** |

| Street Address | City, State and ZIP Code |
|---|---|
| **8741 W. SUMMERDALE AVE. #1F, CHICAGO,IL 60656** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **ANN & ROBERT H. LURIE CHILDREN'S HOSPITAL OF CHICAGO** | **Unknown** | **(312) 227-4000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **225 E. CHICAGO AVE., CHICAGO, IL 60611** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **03-04-2021** | **03-04-2021** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by David J Leffler on 10-19-2021 11:49 AM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| AMENDED CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **440-2021-05694** |

| **ILLINOIS DEPARTMENT OF HUMAN RIGHTS** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**I was hired by Respondent on or around January 22, 2018. My most recent position was Maintenance Engineer Level 2. On or around March 4, 2021, I was discharged.**

**I believe I have been discriminated against because of my race, White, sex, male, and retaliation, in violation of Title VII of the Civil Rights Act of 1964.**

**I believe I have been discriminated against because of my age, 45, (Date of birth: 1975), in violation of the Age Discrimination in Employment Act of 1967, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by David J Leffler on 10-19-2021 11:49 AM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: David J. Leffler<br>8741 W. Summerdale Ave. #1F<br>Chicago, IL 60656 | From: **Chicago District Office**<br>**230 S. Dearborn**<br>**Suite 1866**<br>**Chicago, IL 60604** | **EXHIBIT**<br>*B* |
|---|---|---|

☐    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2021-05694** | **Shuwn Hayes,**<br>**Investigator** | **(312) 872-9733** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** **before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/eh*        10/26/2021

Enclosures(s)        **Julianne Bowman,**        *(Date Issued)*
       **District Director**

cc:

**Joni M. Duncan**
**Chief Human Resources Officer**
**ANN&ROBERT H. LURIE CHILDREN HOSPITAL**
**225 E. Chicago Avenue**
**Box 14**
**Chicago, IL 60611**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***


EXHIBIT


Ann & Robert H. Lurie
Children's Hospital of Chicago·

### NOTICE OF DISCIPLINARY ACTION

The Progressive Disciplinary Action process is designed to give employees an opportunity to correct problems such as performance, conduct and attendance. However, failure to improve such problems may result in more serious disciplinary action up to and including termination of employment.

**Employee Name:** David Leffler
**Job Title:** Maintenance Engineer I
**Date of Hire:** 1/22/2018

**Employee ID:** 35251
**Department:** Facilities

**Disciplinary Action: (Check all that apply)**

☐     Verbal Warning     Click here to enter a date.
☐     Written Warning     Click here to enter a date.
☐     Final Warning     Click here to enter a date.
☒     Termination     3/4/2021
☐     Administrative Leave     Click here to enter a date.

**Issue: (Check all that apply)**

☐     Attendance/Tardiness
☐     Performance
☒     Conduct
☒     Violation of Policy/Core Values
☐     Other (specify) Click here to enter text.

**Historical Information: What lead to the current situation? List previous dates and related incidents**

July 2019: A hotline caller reported being offended by the original United States flag that was hung in David's cubicle, which some associate with this country's history of slavery. Leadership within the Facilities Department removed the flag. Eric Hoffman, VP for facilities spoke with David to advise why the flag was removed. The flag had been known to be displayed by white supremacy groups.

April / May 2020: A hotline report was filed regarding allegations of an altercation between David and another employee. A colleague reported David's aggressive communication regarding firearms, which prompted the coworker to attempt to contact the police. In the investigation, it was discovered that David had items posted on his bulletin board in his cubicle including a decal of a white rabbit which has been linked to a militia group representing white supremacy.

**Specific Details of Incident: Please reference all relevant documents and policies /policies**

A hotline report was filed with Corporate Compliance regarding decals that David had in his space at Clark and Deming, which were offensive to the caller. In addition, it was reported that David made disparaging remarks against the LBTQ community. Upon investigation, it was discovered that on February 4, 2021, Phil Rominski had requested that the 2 decals be removed, one of the "Three Percenters", and one of QAnon. On February 5,

2021, the decals were not removed but covered by 2 additional decals, The Original Homeland Security and Don't Tread on Me, which has been associated with militia movements. An employee also reported that David stated that individuals who identify as LGBTQ should not be permitted to serve in the military.

David was interviewed on February 18, 2021 by staff from Human Resources, Security and Corporate Compliance regarding the allegations. David admitted that he did not remove the decals as instructed and instead covered them up with other decals of a similar nature that precipitated the initial complaint. David did recall that during a previous conversation it was explained to him that he could not post offensive symbols in his workspace.

Despite these prior discussions, David failed to consider the impact of his conduct on his coworkers and ignored a directive to remove the decals he posted. His comment regarding military service of individuals who identify as LGBTQ does not comply with our non-discrimination policy. He has, on numerous occasions, utilized work space to advocate for militia groups, which do not align with the Hospital's values.

Therefore, David's employment is being terminated effective immediately.


**List documents/attachments given:**

Click here to enter text.


**Describe expectations, action plan and/or next steps:**

Click here to enter text.


**Employee Comments:**




**Disciplinary Action may be contested through the Problem Resolution Process by contacting Human Resources (extension 73030 or hrbconsulting@luriechildrens.org) within 7 business days of issuance of the disciplinary action. Verbal disciplinary actions and/or any disciplinary actions issued during the 90-day Introductory Period cannot be contested).**

| Name (print) | Signature | Date |
|---|---|---|
| **Employee:**<br><br>**David Leffler** | (Signature acknowledges that this disciplinary action has been reviewed with me and does not necessarily indicate agreement). | 3/4/2021 |

| | | |
|---|---|---|
| **Issuing Manager:**<br><br>**Steve Barstatis** | | **3/4/2021** |
| **Witness:**<br>(2nd Department Leader if necessary)<br><br>**Phil Rominski** | | **3/4/2021** |

Original – Department File
Copy – Employee
Copy – HR File