IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID LEFFLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22 C 401 |
| | ) | |
| ANN & ROBERT H. LURIE | ) | Judge Joan H. Lefkow |
| CHILDREN'S HOSPITAL OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

David Leffler filed this action against his former employer, Ann & Robert H. Lurie

Children's Hospital (Lurie Children's), alleging violations of his rights under Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII). (Dkt. 1.)[1] Leffler

seeks compensatory and punitive damages, back pay with pre-judgment interest, forward pay due

to decreased earnings, and fees and costs. Lurie Children's has moved to dismiss the complaint

under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 11.) For the reasons below, the motion is

granted.

## BACKGROUND

Leffler's complaint alleges the following. Leffler is approximately 46 years old,

Caucasian, and heterosexual. (Dkt. 1 ¶ 2.) Around January 18, 2018, he began working for Lurie

Children's as a maintenance engineer. (*Id.* ¶ 4.) In July 2019, he displayed a United States "Betsy

Ross Flag" alongside other "patriotic decals" in his cubicle. (*Id.* ¶ 13). He was directed to

---

[1] This court has jurisdiction under 42 U.S.C. § 2000e-5(f)(3), and venue is proper under 28
U.S.C. § 1391 (b)(1) and (d).

remove these items after an anonymous caller to a corporate compliance hotline reported that they were offensive and that the flag was associated with slavery. (*Id.* ¶ 14.)

In April 2020, Leffler had a series of encounters with another employee named Jason Fullerton, who is a homosexual male. (*Id.* ¶¶ 11–12.)[2] Around April 14, while Leffler was speaking with a coworker about music, Fullerton said, "How did you know I was singing that on the way to work?" and sang, "David Leffler lick my balls, David Leffler is a ball licker." (*Id.* ¶ 15.) Around April 21, Fullerton approached Leffler while Leffler was working out during his lunch break and asked Leffler "why he always has to be moving around" and "why he can't just sit still." (*Id.* ¶ 16.)

Around April 28, 2020, while Leffler was speaking with a coworker about topics related to the ongoing COVID-19 pandemic, including the government's response and media coverage, he observed Fullerton listening to the conversation. (*Id.* ¶¶ 18–19.) Later, while Leffler was speaking with a second coworker about topics related to Christianity, including the "book of Revelation," he again observed Fullerton listening to the conversation. (*Id.* ¶¶ 20–21.) After Leffler returned to his desk, Fullerton approached him and said, "Don't think that people like you here, everyone talks about you behind your back," and "You've been here two years, you're no longer welcome, your time is up." (*Id.* ¶¶ 22–24.) Fullerton also called Leffler "unreliable" and accused him of narcotics abuse. (*Id.* ¶ 25.)

---

[2] In his complaint, Leffler only alleges encounters with Fullerton that occurred during April 2020. But in his brief in opposition to Lurie Children's motion to dismiss (dkt. 15), he further states that "Fullerton approached [him] at work and insulted, bullied, berated, and/or harassed [him]" "on multiple occasions through the spring and summer of 2020," while still only specifically identifying the April 2020 incidents. (*Id.* at 4–5.) The court may consider facts alleged in a response brief to a motion to dismiss "so long as they are consistent [with] the allegations in the complaint." *Smith* v. *Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citation omitted). To be generous to Leffler's position, it will treat the period of alleged harassment as also occurring during the summer of 2020.

Sometime in April 2020, Leffler was speaking with another coworker about a type of firearm that they had both owned, as well as the fact that Leffler had recently purchased a bulletproof vest. (*Id.* ¶¶ 26–27.) Fullerton approached them and "accuse[d] Leffler of 'having a list' of people Leffler wished to kill, and aggressively interrogat[ed] Leffler as to 'why anyone would need a bulletproof vest.'" (*Id.* ¶¶ 28–29.) Immediately after this conversation, an anonymous caller contacted a corporate hotline and complained that Leffler "spoke 'aggressively' of firearms to another employee; that Leffler was compiling a 'kill list' and that the caller believed he was on it; and that Leffler was abusing narcotics." (*Id.* ¶ 30).

Todd Larson[3] interviewed Leffler about these allegations on an unspecified date after the anonymous report was made. (*Id.* ¶ 31.) Larson told Leffler that he "'understood' Leffler's position, and that he believed action was being taken against [Leffler] because of the current political climate." (*Id.* ¶ 32.) Leffler understood this to be a reference to "a series of civil disturbances involving violence, looting, and damage to property occurr[ing] in Chicago and surrounding metropolitan areas stemming from protests organized by 'Black Lives Matter'" in the summer of 2020. (*Id.* ¶¶ 33–34.) During the interview, Leffler also denied the "hit list" allegations and stated that he had merely been "discussing [a] shared interest in firearms" with a coworker; complained that he was "continually harassed by employees who supported the 'Black Lives Matter movement'" and who "referr[ed] to him as a 'racist,' a 'militia member,' and a 'white supremacist'"; and complained that he was "being harassed by Fullerton and subjected to

---

[3] Leffler does not identify Larson's title in his complaint. In his opposition brief, he refers to Larson as an employee of Lurie Children's. (*See* dkt. 15 at 7.)

inappropriate sexually-charged insults and comments." (*Id.* ¶¶ 39–41.)[4] After the interview with Larson, "no formal action [was] taken, and Leffler was permitted to continue working without incident." (*Id.* ¶ 42.)

During the summer of 2020, Lurie Children's maintained a check-in table where employees were required to complete COVID-19 screening procedures. (*Id.* ¶¶ 35–36.) In that area, Lurie Children's displayed a "rainbow LGBT Pride Flag" and provided "a basket of [Black Lives Matter] buttons [for] employees to take and wear at their discretion." (*Id.* ¶ 37.) Some employees were also allowed to distribute "Black Lives Matter" stickers. (*Id.* ¶ 38.)

Around January 2021, Leffler was "laterally transferred" to a different office to continue working as a maintenance engineer. (*Id.* ¶ 43.) Around February 4, Leffler had two political decals "on display in his private office." (*Id.* ¶ 44.) Phil Rominski[5] "ordered" Leffler to remove these decals "because [Rominski] believed them to be 'associated with militia groups and white supremacy' and labeled them 'offensive.'" (*Id.* ¶ 45.) On February 5, Leffler "replaced his decals … with more generalized patriotic images, including the 1775 Gadsden flag with the words 'Don't Tread on Me' inscribed, and a patch which recited the language of the 2nd Amendment and carried the tagline 'The Original Homeland Security.'" (*Id.* ¶ 46.)

On February 18, 2021, members of Lurie Children's Human Resources, Security, and Corporate Compliance interviewed Leffler. (*Id.* ¶ 47.) Leffler "explained that he removed the decals as demanded by Rominski and replaced them with more general patriotic stickers." (*Id.*

---

[4] While recounting this same conversation in his opposition brief, Leffler adds that he "reported that he was being harassed by Fullerton and subjected to inappropriate and sexually-charged insults *on the basis of his orientation*." (Dkt. 15 at 5.) (emphasis added). He also adds that the people calling him a "racist" and "white supremacist" were "several similarly situated African American employees." (*Id.*)

[5] Leffler does not identify Rominski's title in his complaint. In his opposition brief, he refers to Rominski as an employee of Lurie Children's. (*See* dkt. 15 at 7.)

¶ 48.) Lurie Children's told Leffler that his new stickers were also offensive and that he could not display them. (*Id.* ¶ 49.)

On March 4, 2021, Leffler received a letter terminating his employment. (*Id.* ¶ 50; *id.* at 21–23.) The letter, in part, "alleges that 'an employee also reported that [Leffler] states that individuals who identify as LGBTQ should not be permitted to serve in the military' but fails to identify when, how, or to whom this alleged conduct took place." (*Id.* ¶ 51.) Leffler "received no disciplinary actions preceding his termination" (*id.* ¶ 52), "received several written and verbal commendations from doctors and other [Lurie Children's] staffing for his outstanding performance" (*id.* ¶ 53), and "performed all duties of his job description satisfactorily and to the standards and demands of [Lurie Children's]" (*id.* ¶ 54). Leffler alleges that he was terminated "without legitimate cause or reason" (*id.* ¶ 55) and "in retaliation for [his] opposition to [Lurie Children's] actions" (*id.* ¶ 56).

On October 19, 2021, Leffler filed a charge of discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission (EEOC) pursuant to a work-sharing agreement between those agencies. (*Id.* ¶ 8; *id.* at 15–18.) In the section of the charge form labeled "Discrimination Based On," Leffler checked the boxes for "Race," "Sex," "Retaliation," and "Age." (*Id.* at 15.) In the section labeled "Date(s) Discrimination Took Place," Leffler wrote "03-04-2021" for both the "Earliest" and "Latest" dates. (*Id.*) He also included a narrative stating, in relevant part: "I was hired by [Lurie Children's] on or around January 22, 2018. My most recent position was Maintenance Engineer Level 2. On or around March 4, 2021, I was discharged. I believe I have been discriminated against because of my race, White, sex, male, and retaliation, in violation of [Title VII]." (*Id.* at

5

16.) On October 26, 2021, the EEOC issued a notice of right to sue. (*Id.* at 19–20.) Leffler timely filed his complaint (*id.*) on January 24, 2022.[6]

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint to state a claim upon which relief may be granted. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In ruling on 12(b)(6) motions, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Taha* v. *Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). The court may also consider "documents that are attached to the complaint [and] documents that are central to the complaint and are referred to in it," particularly where the plaintiff cites those documents in the body of the complaint and "to some degree[] relie[s] on their contents as support for her claims." *Williamson* v. *Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citation omitted). While the plaintiff "need not allege each evidentiary element of a legal theory to survive a motion to dismiss," *Freeman* v.

---

[6] Title VII's charge-filing requirement is a mandatory claim-processing rule rather than a jurisdictional prerequisite. *See Fort Bend Cnty.* v. *Davis*, 139 S. Ct. 1843, 1851 (2019); *see also McFarland-Lawson* v. *Ammon*, 847 F. App'x 350, 355 (7th Cir. 2021) ("The proper basis for dismissing a[n] … employee's employment discrimination claim that has not been properly exhausted is for failure to state a claim upon which relief can be granted, not lack of subject-matter jurisdiction."). Leffler states that he complied with the requirement by filing his charge "within 300 days of the date of the last act of discrimination, retaliation and harassment" (dkt. 1 ¶ 8(e)) and by filing suit within 90 days of receiving the right-to-sue letter (*id.* ¶ 8(g)). Lurie Children's does not contest the fact that Leffler met these requirements with respect to at least some claims, but it argues that his hostile work environment claims are untimely and unexhausted, as discussed further below. (*See* dkt. 12 at 9–12.)

*Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019), he must

"provide more than mere labels and conclusions or a formulaic recitation of the elements of a

cause of action for [his] complaint to be considered adequate," *Kaminski* v. *Elite Staffing, Inc.*,

23 F.4th 774, 776 (7th Cir. 2022) (citations omitted).

## ANALYSIS

Leffler organizes his Title VII claims into five counts: (I) race discrimination; (II) hostile

work environment based on race; (III) sexual orientation discrimination; (IV) hostile work

environment based on sexual orientation; and (V) retaliation. Lurie Children's seeks to dismiss

counts I, III, and V for failure to state a claim, and counts II and IV for failure to exhaust

administrative remedies, untimeliness, and failure to state a claim. For the reasons explained

below, the court dismisses counts I–V.

## I.      Count I: Race Discrimination and Count III: Sexual Orientation Discrimination

Counts I and III of Leffler's complaint allege that Lurie Children's unlawfully

discriminated against him on the basis of his race and sexual orientation, respectively, in

violation of 42 U.S.C. § 2000e-2(a). Although not identified as such in Leffler's complaint, the

motion to dismiss characterizes his race and sexual orientation discrimination counts as stating

disparate treatment claims, and Leffler's opposition brief does the same.

To plead his disparate treatment claims, Leffler must allege facts allowing the court to

draw a reasonable inference that (1) his "employer took job-related action against him" which

was (2) "motivated by intentional discrimination." *Alamo* v. *Bliss*, 864 F.3d 541, 552 (7th Cir.

2017). The employer's job-related action must be "a materially adverse change in the terms and

conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of

job responsibilities[,]" *id.* at 552 (citation omitted), including, as relevant here, termination and

"unbearable changes in job conditions, such as a hostile work environment or conditions

amounting to constructive discharge," *Reives* v. *Illinois State Police*, 29 F.4th 887, 894 (7th Cir. 2022) (quoting *Barton* v. *Zimmer*, 662 F.3d 448, 453–54 (7th Cir. 2011)).

As framed in his opposition brief, Leffler claims that Lurie Children's discriminated against him through "its choice to take [a] position in support of a specific race (African American) over others by permitting the display of LGBT Pride Flags and handing out Black Lives Matter buttons, stickers, and other memorabilia, and through its employees Fullerton, Rominski, and Larson." (Dkt. 15 at 7.). Lurie Children's argues that Leffler has not stated a disparate treatment claim because he has not identified how he was treated differently from other employees or identified employees who received better treatment than he did.

Although this may be true, Leffler seems to be saying that African American and LGBTQ employees were allowed to display symbols of their group identity, but he was not. This prohibition, however, was not materially adverse, i.e., not a change in the terms and conditions of employment more disruptive than a mere inconvenience. *See Alamo*, 864 F.3d at 552. And it was certainly not an "unbearable change[] in [his] job conditions." *Reives*, 29 F.4th at 894.

If Leffler means that he was treated less favorably than Fullerton, who made several insulting remarks to him, Leffler does not formulate any theory of disparate treatment that the law would recognize. Nor can the court reasonably infer that these incidents created intolerable conditions—on the contrary, Leffler does not complain of any interactions with Fullerton after the spring or summer of 2020, and Leffler was "permitted to continue working without incident" after reporting Fullerton's conduct to Larson. (Dkt. 1 ¶ 42.) Furthermore, Leffler does not allege that Fullerton had any kind of supervisory authority or management role; instead, he states that he "worked alongside" Fullerton (*id.* ¶ 11) and that Fullerton was "similarly situated" to himself (dkt. 15 at 4). Because a disparate treatment claim requires a showing that an *employer* took an

adverse employment action against its employee, allegations that a coworker engaged in rude or harassing behavior are insufficient to state a claim on which relief can be granted without some additional basis for employer liability. As such, the complaint fails to set out any adverse employment action that might form the basis of a disparate treatment claim aside from his termination.

Leffler also fails to plead facts permitting the reasonable inference that any adverse action was "motivated by intentional discrimination." *Alamo*, 864 F.3d at 552. *See also Kaminski*, 23 F.4th at 776 (noting that a Title VII plaintiff must plead "factual allegations directly or indirectly connecting the [adverse employment action] with her [protected characteristics]"). For his race discrimination claim, Leffler asks the court to draw a connection between his racial identity (white) and the accusations that he displayed images associated with white supremacy. But white supremacy is a political ideology not intrinsic to any racial identity, and political speech is not a protected characteristic under Title VII. *See* 42 U.S.C. § 2000e-2(a)(2) (prohibiting discrimination based on "race, color, religion, sex, or national origin"). The court cannot reasonably infer that terminating an employee because he displays political symbols that the employer finds offensive is tantamount to acting against him based on his race. And given the choice between the tenuous inference of racial discrimination and the "obvious alternative explanation" that Lurie Children's took action against Leffler for displaying offensive messages on multiple occasions despite warnings not to do so, "discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682. *See also McCauley* v. *City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief.") (cleaned up).

9

Leffler's sexual orientation discrimination claim is similarly implausible. Leffler claims that Fullerton harassed him on the basis of his sexual orientation,[7] but the court cannot infer any connection between this and Leffler's subsequent termination. By Leffler's account, the harassment occurred and was reported to Larson during the spring and summer of 2020 and then stopped, and Leffler was not terminated until March 2021.

In sum, Leffler's pleading does not permit the court to draw any reasonable inference that his termination was connected to his Caucasian or heterosexual identities. And to the extent that Leffler might have been treated differently on the basis of his political beliefs, that is not actionable under Title VII. Counts I and III are dismissed.

## II.   Counts II and IV: Hostile Work Environment Based on Race and Sexual Orientation

### A.        Failure to State a Claim

In counts II and IV of his complaint, Leffler alleges that Lurie Children's subjected him to a hostile work environment on the basis of his race and sexual orientation, in violation of 42 U.S.C. § 2000e-2(a). Stating a Title VII hostile work environment claim requires a plaintiff to allege facts indicating that "(1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri* v. *Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833–34 (7th Cir. 2015).

---

[7] As noted earlier, the phrase "on the basis of his sexual orientation" appears only in Leffler's opposition brief, not his complaint. It is questionable whether this addition can be considered "consistent [with] the allegations in the complaint," *Smith*, 803 F.3d at 311, or whether it is an attempt to impermissibly broaden the allegations beyond the scope of the complaint. In any event, the court concludes that Leffler has not stated this claim, even when considering the more expansive articulation found in the opposition brief.

Indicia of a hostile work environment include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The offending conduct must also be both objectively and subjectively hostile. *Id.* at 21–22.

Leffler generally alleges that he was "repeatedly subjected to unwanted harassment based on his race [and sexual orientation] as set forth above" and that Lurie Children's "knew and/or should have known of the harassment and failed to take prompt remedial action." (Dkt. 1. ¶¶ 63–64, 73–74.) Lurie Children's argues that Leffler has not stated a plausible hostile work environment claim because he has not pleaded facts suggesting severe or pervasive conduct or a basis for employer liability. In his opposition brief, Leffler argues that the hostile work environment occurred "by [Lurie Children's] choice to take [a] position in support of a specific race (African American) over others by permitting the display of LGBT Pride Flags and handing out Black Lives Matter buttons, stickers, and other memorabilia, and through its employees Fullerton, Rominski, and Larson." (Dkt. 15 at 14–15.)

Leffler fails to state a plausible claim for relief on this basis. First, regarding Lurie Children's decisions to display the Pride Flag, make Black Lives Matter buttons available for employees who wanted one, and allow some employees to distribute Black Lives Matter stickers (dkt. 1 ¶¶ 37–38), Leffler assumes without explanation that these acts reflect a "choice to take [a] position in support of a specific race … over others" (dkt. 15 at 14–15). The court also cannot draw any reasonable inference that a reasonable person would perceive these choices as harassment of Leffler individually.

Next, Leffler references harassment inflicted on him by Fullerton, but this is also not a plausible basis for relief. Fullerton made one harassing comment to Leffler that was sexual in nature and could plausibly be interpreted as connected to Leffler's sexual orientation. (*See* dkt. 1 ¶ 15.) But this single comment is not a plausible basis for hostile work environment liability. *See Harris*, 510 U.S. at 21 ("Mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII.") (cleaned up); *Ford* v. *Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) ("Title VII is 'not … a general civility code' and [we] will not find liability based on the 'sporadic use of abusive language.'") (quoting *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 788 (1998)). Beyond that, Fullerton's other April 2020 statements to Leffler were rude, but there is no indication that they had anything to do with Leffler's race or sexual orientation. (*See* dkt. 1 ¶¶ 16–29.) Although Leffler states in his opposition brief that Fullerton harassed him "[o]n multiple occasions through the spring and summer of 2020" (dkt. 15 at 4), his failure to provide any further information (aside from recounting the April 2020 incidents again) prevents the court from evaluating whether such incidents might form a plausible basis for relief—setting aside the issue of whether this added language is a permissible expansion of the allegations in the complaint. *See Swanson* v. *Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) ("'[A]bstract recitations of the elements of a cause of action or conclusory legal statements' do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law.") (citation omitted).

As for Larson, nothing suggests that his interview of Leffler could be considered harassment—on the contrary, he told Leffler that he "understood" his position and did not take any "formal action" against him. (Dkt. 1 ¶¶ 31–42.)

Finally, concerning Rominski, Leffler again fails to plead facts that might support a claim. Leffler states that Rominski told him to remove political decals displayed in his office because they were "offensive" and "associated with militia groups and white supremacy." (Dkt. 1 ¶ 45.) Once again, political speech is not protected under Title VII, and Leffler therefore fails to identify any "harassment" for Title VII purposes absent any suggestion that the requests to remove the decals might have been connected with Leffler's race or sexual orientation.

### B.    Administrative Exhaustion and Timeliness

In addition to arguing that Leffler has failed to plead a hostile work environment claim, Lurie Children's argues that these putative claims are (1) not administratively exhausted because they are "outside the scope of his [EEOC] charge" (dkt. 12 at 9) and (2) untimely because they rely on conduct that occurred more than 300 days before Leffler filed his EEOC charge (dkt. 12 at 10–11).

"A plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez* v. *Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (cleaned up). A "plaintiff's failure to exhaust administrative remedies is an affirmative defense," *Salas* v. *Wis. Dep't of Corr.*, 493 F.3d 913, 922 (7th Cir. 2007), and the plaintiff "need not anticipate or refute potential affirmative defenses" in his complaint, *Luna Vanegas* v. *Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Still, dismissal on this basis may be proper "when a party has included in its complaint 'facts that establish an impenetrable defense to its claims.'" *Hecker* v. *Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009) (citation omitted).

On Leffler's EEOC charge form, he checked the boxes indicating discrimination based on race, sex, age, and retaliation; he listed March 4, 2021 as both the earliest and latest date that discrimination took place; and he included a brief narrative stating that he was discharged and

13

that he was discriminated against. (Dkt. 1 at 15–16.) Absent from Leffler's EEOC charge is any indication of the hostile work environment claims he now brings. Although he did not need to use the phrase "hostile work environment" verbatim, he needed to lay the basis for these claims—for instance, by using the word "harassment." *See Huri*, 804 F.3d at 832 ("In the context of Title VII cases, the word 'harassment' frequently describes the conduct that defines the phrase 'hostile work environment.'"). He also failed to mention any of the specific instances of allegedly harassing conduct that now underlie his hostile work environment claims. His mention of his termination in the charge does not suffice because it does not provide a basis for this claim. *See Lapka* v. *Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (distinguishing termination, which is a "discrete act of discrimination," from the constituent acts of a hostile work environment claim, which "do not give rise to a cause of action by themselves"). His claims in counts II and IV are thus not "like or reasonably related to the allegations of the [EEOC] charge," *Chaidez*, 937 F.3d at 1004, and they are likely unexhausted as a result.[8] Counts II and IV are dismissed.

## III.    Count V: Retaliation

Count V of Leffler's complaint alleges that Lurie Children's terminated him in retaliation for his "opposition to Hospital's actions," in violation of 42 U.S.C. § 2000e-3(a). (Dkt. 1 ¶ 79.) In his opposition brief, Leffler specifies that his "reporting harassment to Todd Larson" prompted the retaliation.[9] (Dkt. 15 at 16.) Lurie Children's argues that Leffler has not pleaded facts supporting a connection between his report to Larson and his later termination.

---

[8] The court declines to reach the issue of whether these claims, if they had been properly exhausted, would have been timely.

[9] Leffler does not say what position Larson held at Lurie Children's, but drawing all reasonable inferences in Leffler's favor, the court can assume that he was an employee with the capacity to field such reports.

A Title VII retaliation plaintiff must allege "that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri*, 804 F.3d at 834 (citing *Luevano* v. *Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). A protected activity occurs when the plaintiff takes "some step in opposition to a form of discrimination that [Title VII] prohibits." *O'Leary* v. *Accretive Health, Inc.*, 657 F.3d 625, 631 (7th Cir. 2011). The definition of an "adverse employment action" supporting a retaliation claim is broader than in the disparate treatment context. *See Poullard* v. *McDonald*, 829 F.3d 844, 856 (7th Cir. 2016) ("In the retaliation context, the challenged adverse action need not be one that affects the terms and conditions of employment, but it 'must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity.'") (citation omitted).

Leffler reported to Larson "that he had been continually harassed by employees who supported the 'Black Lives Matter movement,' referring to him as a 'racist,' a 'militia member,' and a 'white supremacist'" (dkt. 1 ¶ 40) and that he "was being harassed by Fullerton and subjected to inappropriate sexually-charged insults and comments" (*id.* ¶ 41). In his opposition brief, Leffler further states that he told Larson he was being harassed "on the basis of his orientation." (Dkt. 15 at 5.)

Drawing all reasonable inferences in Leffler's favor, the court can infer that he engaged in protected activity by reporting alleged harassment on the basis of his sexual orientation to Larson. Discrimination based on sexual orientation is prohibited by Title VII, and for the purpose of the retaliation claim, it is irrelevant whether Leffler would actually succeed on the underlying discrimination claim; rather, "it is sufficient if the plaintiff has a reasonable belief that [he] is challenging conduct in violation of Title VII." *Holland* v. *Jefferson Nat. Life Ins. Co.*, 883 F.2d

1307, 1314 (7th Cir. 1989). Taking Leffler's pleaded facts as true, the court can reasonably infer that Leffler did have that belief. It is less clear whether Leffler also complained to Larson of harassment based on his race, but the court need not make that determination at this time because Leffler has adequately pleaded that he reported sexual orientation discrimination.

The only adverse action alleged was the termination, since Leffler does not allege facts that would suggest his lateral transfer was retaliatory. A lateral transfer "may constitute an adverse employment action … if it reduces the employee's 'opportunities for future advancement,'" but Leffler has not pleaded any facts to support such an inference. *O'Neal* v. *City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009).

The remaining question, then, is whether Leffler has adequately pleaded that the termination occurred as a result of his report. Although he need not carry any evidentiary burden at this time, he does need to plead some facts to suggest a connection in order to establish a plausible claim for relief. *See Carlson* v. *CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) ("[A] retaliation claim can indeed be so bare-bones that a lengthy time period between the protected activity and the alleged retaliation will make any causal connection between the two implausible."). There is no bright-line rule about the temporal proximity that makes a claim plausible, but "even intervals shorter than four months are unlikely, standing alone, to establish the causation element of a retaliation claim." *Id.* at 828–29.

Leffler does not specify when he spoke to Larson, but it seems to have been around the summer of 2020—nearly a year before his March 2021 termination. There is no other apparent connection between his report to Larson and his termination. On the contrary, Leffler states that "[t]he interview [with Larson] concluded with no formal action taken, and Leffler was permitted to continue working without incident." (Dkt. 1 ¶ 42.) Without anything to suggest a connection

16

between his protected activity and the later adverse action, Leffler fails to plead a retaliation claim. Count V is dismissed.

## **CONCLUSION AND ORDER**

Lurie Children's motion to dismiss (dkt. 11) is granted. The complaint is dismissed without prejudice. Leffler has until March 27, 2023 to file an amended complaint if he chooses to do so. If he does not, the court will enter a final judgment in favor of defendant.

Date: March 6, 2023

_____
U.S. District Judge Joan H. Lefkow