## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **DAVID LEFFLER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 1:22-cv-00401** |
| | ) | |
| **ANN & ROBERT H. LURIE** | ) | |
| **CHILDREN'S HOSPITAL OF** | ) | **Jury Trial Demanded** |
| **CHICAGO,** | ) | |
| **Defendant.** | ) | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, David Leffler ("Leffler"), by his attorneys, Marc P. Trent of Trent Law Firm, P.C. hereby complain against Defendant Ann & Robert H. Lurie Children's Hospital of Chicago ("Hospital") as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief and for damages against the defendant to enforce the Plaintiff's rights to be free from race discrimination, retaliation and to be free from subjugation to a hostile work environment as secured by Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.)* ("Title VII").

## PARTIES

2.      Plaintiff Leffler is an adult, heterosexual, Caucasian male, approximately 46 years of age, and was at all times relevant a resident of the territorial jurisdiction of this District Court.

3.     Defendant Hospital is a non-profit corporation licensed to do business in the State of Illinois. At all times relevant, Hospital did business within the territorial jurisdiction of the District Court.

4.     On or about January 18, 2018, Leffler began employment with the Hospital as a Maintenance Engineer, Level II.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, as the district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

6.     Jurisdiction is also invoked pursuant to the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-3(a); 2000e—5(g)(1).

7.     Venue is proper under 28 U.S.C. § 1391 (b)(1) and (d) because the Defendant Hospital has a principal place of business in this judicial district and all of the acts and occurrence that give rise to this lawsuit took place in this judicial district.

8.     All jurisdictional prerequisites to a lawsuit under Title VII as well as the retaliation provision under said statute have been met, to wit:

a.     On July 28, 2021, Leffler submitted an EEOC Inquiry attached herein as Exhibit A, in which he alleges that he was discriminated against on the basis of his race and sexual orientation in conjunction with being continually verbally harassed by similarly situated employees.

b.      On October 19, 2021, Leffler filed a charge of discrimination under Title VII and the ADEA which was perfected by the Illinois Department of Human Rights ("Department") and by a work sharing agreement between the Department and the Equal Employment Opportunity Commission ("EEOC") was cross-filed and perfected at both agencies;

c.      The charge was filed at the Department as of October 19, 2021 (*see* Exh. B);

d.      The charge was perfected and stamped "received" by the IDHR and thus was perfected at both the IDHR and the EEOC on October 19, 2021 (*see* Exh. B);

e.      The charge was assigned EEOC Charge No. 440-2021-05694 (*see* Exh. B);

f.      The charge pursuant to the work-sharing agreement between agencies was filed within 300 days of the date of the last act of discrimination, retaliation and harassment, which was and were on-going through the date Leffler was terminated;

g.      Leffler received a Right-to-Sue letter from the EEOC dated October 26, 2021 (*see* Exh. C);

h.      This lawsuit was filed within 90 days of the date of receipt of the Right-to-Sue letter (*see* Exh. C);

## **BACKGROUND**

9.      Plaintiff complains of continuous subjugation to a hostile work environment that he experienced, and retaliation that he experienced, after he repeatedly complained beginning on or about April 2020 and continuing to March 2021.

10.    That on or about January 18, 2018, Hospital hired Leffler to work as a Maintenance Engineer. Other similarly situated employees were non-Caucasian and/or of a sexual orientation other than heterosexual.

11.    That during the course of Leffler's employment with Hospital, JASON FULLERTON ("Fullerton"), worked alongside Leffler at Hospital.

12.    Upon information and belief, Fullerton is a homosexual male.

13.    That in July 2019, Leffler displayed a United States flag conformant with the Flag Act of 1777, commonly referred to as a "Betsy Ross Flag", in his cubicle.

14.    That in July 2019, Leffler was ordered to remove his flag, along with several patriotic decals, after an alleged call to the "compliance hotline" reported Leffler's workspace as "offensive" and describing the United States flag as "associated with slavery."

15.    That upon information and belief, said report was made by "Curtis" an African-American employee of Hospital who worked alongside Leffler.

16.    That on or around April 14, 2020, Leffler was engaged in a conversation regarding musical interests with another coworker when he was confronted by Fullerton, who then and there stated, without provocation "How did you know I was singing that on the way to work?" and continued in song "David Leffler lick my balls, David Leffler is a ball licker."

17.    That on or around the week of April 21, 2020, Leffler was working with dumbbells during his lunch break when he was approached by Fullerton, who demanded that Leffler explain "why he always has to be moving around" and "why he can't just sit still?"

18.     That on or around April 28, 2020, Leffler arrived to work at Hospital and engaged in separate conversations with two (2) coworkers, Jacob and Sean.

19.     Leffler first spoke with Jacob about the topical COVID-19 pandemic, the Presidential administration's response to the pandemic, and the coverage of said response by various popular news media outlets.

20.     During the course of said conversation, Leffler observed Fullerton eavesdropping.

21.     Leffler then was approached by Sean, who wished to speak with him about Christianity. The two spoke of various Christian topics, including the book of Revelation.

22.     During the course of said conversation, Leffler observed Fullerton eavesdropping.

23.     Following the conclusion of Leffler's conversation with Sean, Leffler returned to his desk and took his seat.

24.     Immediately following Leffler's return, he was approached by Fullerton.

25.     Fullerton then stated to Leffler, without provocation, "Don't think that people like you here, everyone talks about you behind your back," and "You've been here two years, you're no longer welcome, your time is up."

26.     Fullerton continued by berating Leffler for being "unreliable" and accused him of abusing narcotics.

27.     On or about April 2020, Leffler engaged in conversation with a coworker, DARIEN BURTON ("Burton") regarding a firearm Burton had recently purchased and Leffler had also previously owned.

28.     During said conversation, Leffler also mentioned his recent purchase of a bulletproof vest to Burton in the natural flow of their firearms-related conversation.

29.     While in the course of conversation, Burton and Leffler were interrupted by Fullerton, who had been eavesdropping on their conversation.

30.     Fullerton proceeded to interject into the conversation and accuse Leffler of "having a list" of people Leffler wished to kill, and aggressively interrogating Leffler as to "why anyone would need a bulletproof vest."

31.     Immediately following this event, an anonymous "hotline report" was allegedly made complaining that Leffler spoke "aggressively" of firearms to another employee; that Leffler was compiling a "kill list" and that the caller believed he was on it; and that Leffler was abusing narcotics. Upon information and belief, said report was made by Fullerton.

32.     Following this report, Leffler was interviewed by TODD LARSON ("Larson") regarding the allegations made.

33.     During this conversation, Larson explained that he "understood" Leffler's position, and that he believed action was being taken against him because of the current political climate.

34.     During the Summer of 2020, a series of civil disturbances involving violence, looting, and damage to property occurred in Chicago and surrounding metropolitan areas stemming from protests organized by "Black Lives Matter" ("BLM").

35.     Upon information and belief, Larson referred to these events and their preceding incidents when describing the "current political climate."

36.     Throughout the Summer of 2020, employees of Hospital were required to complete a "check-in" procedure including temperature-taking and hand sanitizing to combat the spread of COVID-19.

37.     Hospital maintained a particular area with a table for employees to complete their check-in procedures.

38.     In the area designated for checking in, Hospital displayed a rainbow LGBT Pride Flag, and a basket of BLM buttons for employees to take and wear at their discretion.

39.     Throughout the Summer of 2020, other employees were permitted to pass out BLM stickers with the phrase "Black Lives Matter."

40.     Leffler dismissed allegations that he had a "hit list" as ridiculous, and explained that he and Burton were simply discussing their shared interest in firearms.

41.     Leffler continued to explain that he had been continually harassed by various other employees, many of which were African-American, including "Curtis", Jay Johnson, and "Tracy", referring to him as a "racist," a "militia member," and a "white supremacist," among others.

42.     That the insults levied towards Leffler by African-American employees identifying him as a "racist". "white supremacist", a right-wing "militia member" and similar derive from a prejudiced and discriminatory connection of Leffler's ethnicity, white, and what said African-American employees wrongly assumed to be Leffler's political beliefs.

43.     Leffler continued to complain to Larson that he was being harassed by Fullerton and subjected to inappropriate sexually-charged insults and comments.

44.  The interview concluded with no formal action taken against Leffler or against Leffler's abusers.

45.  Upon information and belief, Hospital performed no investigation into Leffler's complaints and took no actions to prevent further harassment from occurring.

46.  Although no action was taken against Leffler following investigation by Larson, because Leffler had done nothing wrong, Hospital's investigation of Leffler demonstrates a practice of selective investigation of reports made by similarly situated homosexual and African-American employees, while Leffler's reports were seemingly ignored.

47.  On or around January 2021, Leffler received a promotion and was transferred to an office in Lincoln Park to perform duties as a Maintenance Engineer.

48.  That the position granted to Leffler was one with a contentious application process, and Leffler's receipt of the position angered several other employees vying for the position, namely "Tracy" an African-American employee of Hospital, and "Jay Johnson" an African-American employee of Hospital.

49.  On or around February 4, 2021, Leffler had on display in his private office two (2) decals representing his political affiliations, which he understood to be acceptable at Hospital based on the permitted display of items related to Black Lives Matter and the LGBTQ+ movement. *See* ¶¶ 33-35.

50.  Upon information and belief, following Leffler's promotion, additional complaints from African-American employees frustrated with Leffler's promotion sparked controversy surrounding Leffler's decals.

51.     On or around February 4, 2021, Leffler was ordered by PHIL ROMINSKI ("Rominski") to remove said decals because he believed them to be "associated with militia groups and white supremacy" and labeled them "offensive."

52.     On February 5, 2021, Leffler replaced his decals representing particular political groups with more generalized patriotic images, including the 1775 Gadsden flag with the words "Don't Tread on Me" inscribed, and a patch which recited the language of the 2nd Amendment and carried the tagline "The Original Homeland Security."

53.     That the 1775 Gadsden flag is considered the first emblem adopted by the United States Marine Corps, and is unrelated to any political affiliation of Leffler. Leffler's choice to display the 1775 Gadsden flag derives from his previous service as a United States Marine.

54.     That Leffler's interest in firearms and choice to display a decal reciting the 2nd Amendment derives from his previous service as a United States Marine.

55.     That Leffler had received no directive or orders at any time that he was not allowed to discuss firearms with fellow employees who approached him about the subject or display a small decal showing his support for the United States Constitution in his personal working area. Leffler further received no instruction that he was not to display the 1775 Gadsden Flag pertaining to his military service in his personal working area, and had ascertainable reason to believe said images would be considered "offensive".

56.     That during Leffler's conversation with Larson regarding his discussion of firearms and allegations of compiling a "kill list," no instruction was given to Leffler that he was not to display personal items in his work area discussing his support for the Constitution and/or reflecting his military service.

57.     That no employee of Hospital instructed Leffler not to display personal items in his work area.

58.     That when instructed to not display certain items in his working area, Leffler complied.

59.     That other similarly situated African American employees were permitted to display personal items in their working areas.

60.     That other similarly situated homosexual employees were permitted to display personal items in their working areas.

61.     That other similarly situated African American employees were permitted to display personal political items in public working areas. (*See* ¶¶ 33-35.)

62.     That other similarly situated homosexual employees were permitted to display personal political items in public working areas. *See* ¶¶ 33-35.

63.     On February 18, 2021, Leffler was interviewed by Human Resources, Security and Corporate Compliance regarding the above-referenced allegations.

64.     During said conversation, Leffler explained that he removed the decals as demanded by Rominski and replaced them with more general patriotic stickers pertaining to his military service and patriotism.

65.     On March 4, 2021, Leffler received a Letter of Termination from Hospital, which outlined his termination of employment (*see* Exh. D).

66.     Said letter alleges that "an employee also reported that [Leffler] states that individuals who identify as LGBTQ should not be permitted to serve in the military" but fails to identify when, how, or to whom this alleged conduct took place.

67.     Said letter makes no allegation that Leffler was ordered to remove his new patriotic decals placed in an effort to comply with Hospital's demands. Instead, Hospital explains in Leffler's Letter of Termination that:

"David did recall that during a previous conversation it was explained to him that he could not post offensive symbols in his workspace."

"Despite these prior discussions, David failed to consider the impact of his conduct on his coworkers and ignored a directive to remove the decals he posted…

Therefore, David's employment is being terminated effective immediately."

68.     Said letter alleges that "2 additional decals, The Original Homeland Security and Don't Tread on Me, which has been associated with militia movements," were placed in Leffler's office, covering the original decals he was ordered to remove.

69.     Leffler placed new decals over the decals deemed "offensive" by Hospital in an effort to comply with their demands that he remove them.

70.     That the "Don't Tread on Me" Decal, properly named the 1775 Gadsden flag, is a historical artifact related to the Revolutionary War and United States Marine Corp, and has Leffler's display of such has no relation to "militia movements," "racism," or "white supremacy."

71.     That the "The Original Homeland Security" Decal is properly understood to display the 2nd Amendment.

72.     That the 2nd Amendment of the United States Constitution is unrelated to any "militia movement" that Defendant asserted Leffler was allegedly promoting.

73.     During the course of Leffler's employment, Leffler received no disciplinary actions preceding his termination.

74.     During the course of Leffler's employment, he received several written and verbal commendations from doctors and other Hospital staffing for his outstanding performance.

75.     During the course of Leffler's employment, he performed all duties of his job description satisfactorily and to the standards and demands of Hospital.

76.     That on March 4, 2021, Leffler's employment as a Maintenance Engineer with Hospital was terminated without legitimate cause or reason.

77.     That Leffler's termination of employment was derived from Hospital's prejudiced and discriminatory connection of Leffler's ethnicity, white, and what Hospital wrongly assumed to be Leffler's political beliefs.

78.     Leffler's termination was pretextual and in retaliation for Leffler's opposition to Hospital's actions described above.

79.     That Leffler honorably and proudly served the United States of America as a United States Marine alongside fellow soldiers of all colors, creeds, orientations, and ethnicities, and is in no way a racist nor white supremacist despite being treated as such by his employer.

## COUNT I
### Title VII Race Discrimination

80.    Plaintiff restates and realleges paragraphs 1 – 79 as if specifically set forth herein.

81.    42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race.

82.    Defendant violated 42 U.S.C. § 2000e-2(a) by treating Leffler differently than similarly situated African-American employees because of his race.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.    Award compensatory and punitive damages to the maximum amount provided by statute;

C.    Award all back pay lost since the date of terminated plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.    Award forward pay due to decrease in earnings;

F.    Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.    Grant such additional relief as this Court deems just and proper.

## COUNT II
### Title VII Hostile Work Environment – Race Discrimination

83.    Plaintiff restates and realleges paragraphs 1 - 79 as if specifically set forth herein.

84.     42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of race and affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

85.     Leffler belongs to a protected group.

86.     Leffler was repeatedly subjected to unwanted harassment as set forth above.

87.     Hospital knew and/or should have known of the harassment and failed to take prompt remedial action.

88.     At all times hereto, Leffler acted reasonably under the circumstances.

89.     Hospital is liable for the harassment due to a hostile work environment inflicted upon Leffler due to Hospital's violation of Title VII of the Civil Rights Act of 1964 as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.      Award compensatory and punitive damages to the maximum amount provided by statute;

C.      Award all back pay lost since the date of termination plus pre-judgment interest;

D.      Award attorney's fees, expert witness fees, and costs as provided by law;

E.      Award forward pay due to decrease in earnings;

F.      Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.      Grant such additional relief as this Court deems just and proper.

## COUNT III
### Title VII Hostile Work Environment – Sexual Orientation Discrimination

90.      Plaintiff restates and realleges paragraphs 1 - 79 as if specifically set forth herein.

91.      42 U.S.C. § 2000e-2(a) makes it unlawful for an employer to discriminate against an employee on the basis of sexual orientation and affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.

92.      Leffler belongs to a protected group.

93.      Leffler was repeatedly subjected to unwanted harassment as set forth above.

94.      Hospital knew and/or should have known of the harassment and failed to take prompt remedial action.

95.      At all times hereto, Leffler acted reasonably under the circumstances.

96.      Hospital is liable for the harassment due to a hostile work environment inflicted upon Leffler due to Hospital's violation of Title VII of the Civil Rights Act of 1964 as set forth above.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Find that Hospital discriminated against Leffler, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.     Award forward pay due to decrease in earnings;

F.     Retain jurisdiction over this action to assure full compliance with the order of this Court and with applicable law; and

G.     Grant such additional relief as this Court deems just and proper.


**COUNT IV**
**TITLE VII Retaliation**

97.     Plaintiff restates and realleges paragraphs 1 - 79 as if specifically set forth herein..

98.     42 U.S.C. § 2000e-3(a) makes it unlawful for an employer to discriminate against an employee because he opposes any practice which is unlawful under Title VII.

99.     Leffler's opposition to Hospital's actions described above, is protected under 42 U.S.C. § 2000e-3(a).

100.    Hospital terminated Leffler's employment in retaliation for his protected conduct.

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Find that Defendant discriminated against Plaintiff, in violation of Title VII of the Civil Rights Act of 1964;

B.     Award compensatory and punitive damages to the maximum amount provided by statute;

C.     Award all back pay lost since the date of termination plus pre-judgment interest;

D.     Award attorney's fees, expert witness fees, and costs as provided by law;

E.     Award forward pay due to decrease in lower earnings;

F.     Retain jurisdiction over this action to assure full compliance with the order of this

Court and with applicable law; and

G.     Grant such additional relief as this Court deems just and proper.


**PLAINTIFF DEMANDS A TRIAL BY JURY**


Respectfully submitted,

*Marc P. Trent*
_____
Marc P. Trent
An Attorney for Plaintiff


**Marc P. Trent**
**TRENT LAW FIRM, P.C.**
ARDC No. 6324928
1834 Walden Office Square
Suite 500
Schaumburg, IL 60173
(630) 682-3100
*service@trentlawfirm.com*

<u>EXHIBIT A</u>

# EEOC (INQUIRY) NUMBER: 440-2021-05694

## <u>Inquiry Information</u>

### <u>REASON(S) FOR CLAIM</u>

**Date of Incident (Approximate):**  03/04/2021

**Reason for Complaint:**  Race, Age - I am 40 years of age or older, Color, Retaliation - I complained to my employer about job discrimination

**Pay Disparity:**

**Location of Incident:**  Illinois

**Submission (initial inquiry) Date:**  07/28/2021

**Claim previously filed as charge with EEOC?**  No

**Approximate Date of Filing:**  N/A

**Charge Number:**  N/A

**Claim previously filed as complaint with another Agency?**  No

**Agency Name:**  N/A

**Approximate Date of Filing:**  N/A

**Nature of Complaint:**  N/A

### <u>INQUIRY OFFICE</u>

**Receiving:**  Chicago District Office

**Accountable:**  Chicago District Office

### <u>APPOINTMENT</u>

**Appointment Date and time:**  10/08/2021 10:30 AM US/Central

**Interview Type:**  Phone

### <u>APPROXIMATE DEADLINE FOR FILING A CHARGE:</u>  12/29/2021

### <u>POTENTIAL CHARGING PARTY</u>

**First Name, Middle Initial:**  David, J

**Last Name:**  Leffler

**Street or Mailing Address:**  8741 W. Summerdale Ave. #1F

**Address Line 2:**

**City, State, Zip:** CHICAGO, IL, 60656

**Country:**

**Year of Birth:** 1975

**Email Address:** djlef650@gmail.com

**Home Phone Number:**

**Cell Phone Number:** 630-995-2805

## RESPONDENT/Employer

**Organization Name:** ANN & ROBERT H. LURIE CHILDREN'S HOSPITAL OF CHICAGO

**Type of Employer:** Business or non-profit organization that I applied to, work for, or worked for

**Number of Employees:** 20 or more employees

**Street or Mailing Address:** 225 E. Chicago Ave.

**Address Line 2:**

**City, State, Zip Code:** CHICAGO,IL, 60611

**County:** Cook

**Phone Number:** (312) 227-4000

## RESPONDENT CONTACT

**First and Last Name:** Kristen Valasquez

**Email Address:** kvelasquez@luriechildrens.org

**Phone Number:**

**Title:** Human Resources Director or Owner

## LOCATION OF POTENTIAL CHARGING PARTY'S EMPLOYMENT

**Street or Mailing Address:**

**Address Line 2:**

**City, State, Zip Code:**

**County:**

## POTENTIAL CHARGING PARTY'S DEMOGRAPHICS

**Gender:** M

**Disabled:** I do not have a disability

**Are you Hispanic or Latino?** not hispanic or latino

**Ethnicity:** White,

**National Origin:** American(U.S.)

### Adverse Action(s)

During my employment, I was discriminated against due to my race, age, color, and sexual orientation and I was retaliated against for reporting said discrimination to my employer. From approximately April 14, 2020 to March 4, 2021, I was subjected to the following including, without limitation: similarly situated employees of a different race and age that were Black Lives Matter Activists (BLM) verbally assaulted and harassed me; BLM were allowed to wear BLM stickers and I was forced to remove patriotic symbols that they stated were offensive; I was put on administrative leave twice for not supporting BLM; management harassed me and discriminated against me due to false allegations made against me; a homosexual employee told me to "lick his balls"; I was called a white supremacist, racist, and militia member. Management was made aware of the above-referenced acts and failed to remedy. Management further discriminated against me by terminating me under false pretenses.

# Supplemental Information

### What Reason(s) were you given for the action taken against you?

They stated I was terminated due to conduct and violation of policy and core values.

### Was anyone in a similar situation treated the same, better, or worse than you?

Jason Fullerton: See Charge of Discrimination

Various other employees: See Charge of Discrimination

### Please provide name(s) and email and/or phone number of anyone who will support your claim, and briefly describe the information this person will provide.

Ongoing Investigation

**Please tell us any other information about your experience?**

None at this time

**EXHIBIT B**

## ...ED CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **440-2021-05694** |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MR. DAVID J LEFFLER** | **630-995-2805** | **1975** |

| Street Address | City, State and ZIP Code |
|---|---|
| **8741 W. SUMMERDALE AVE. #1F, CHICAGO,IL 60656** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **ANN & ROBERT H. LURIE CHILDREN'S HOSPITAL OF CHICAGO** | **Unknown** | **(312) 227-4000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **225 E. CHICAGO AVE., CHICAGO, IL 60611** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☒ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☒ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **03-04-2021** | **03-04-2021** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

---

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by David J Leffler on 10-19-2021 11:49 AM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| AMENDED CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **440-2021-05694** |

| **ILLINOIS DEPARTMENT OF HUMAN RIGHTS** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

**I was hired by Respondent on or around January 22, 2018. My most recent position was Maintenance Engineer Level 2. On or around March 4, 2021, I was discharged.**

**I believe I have been discriminated against because of my race, White, sex, male, and retaliation, in violation of Title VII of the Civil Rights Act of 1964.**

**I believe I have been discriminated against because of my age, 45, (Date of birth: 1975), in violation of the Age Discrimination in Employment Act of 1967, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by David J Leffler on 10-19-2021 11:49 AM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.    FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.    AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.    PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.    ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws).  Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination.  This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.    WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of.  Without a written charge, EEOC will ordinarily not act on the complaint.  Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed.  Charges may be clarified or amplified later by amendment.  It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA.  Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge.  When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter.  Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings.  Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge.  Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: David J. Leffler<br>8741 W. Summerdale Ave. #1F<br>Chicago, IL 60656 | From: Chicago District Office<br>230 S. Dearborn<br>Suite 1866<br>Chicago, IL 60604 | **EXHIBIT**<br>**C** |
|---|---|---|

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2021-05694 | **Shuwn Hayes,**<br>**Investigator** | **(312) 872-9733** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

| | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
|---|---|
| | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| **X** | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
| | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Julianne Bowman/eh*

10/26/2021

Enclosures(s)

**Julianne Bowman,**
**District Director**

*(Date Issued)*

cc:

**Joni M. Duncan**
**Chief Human Resources Officer**
**ANN&ROBERT H. LURIE CHILDREN HOSPITAL**
**225 E. Chicago Avenue**
**Box 14**
**Chicago, IL 60611**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice _and_ within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do _not_ relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request _within 6 months_ of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*



**EXHIBIT**

**D**


Ann & Robert H. Lurie
Children's Hospital of Chicago·

## NOTICE OF DISCIPLINARY ACTION

The Progressive Disciplinary Action process is designed to give employees an opportunity to correct problems such as performance, conduct and attendance. However, failure to improve such problems may result in more serious disciplinary action up to and including termination of employment.

**Employee Name:** David Leffler        **Employee ID:** 35251
**Job Title:** Maintenance Engineer I       **Department:** Facilities
**Date of Hire:** 1/22/2018

### Disciplinary Action: (Check all that apply)

☐    Verbal Warning        Click here to enter a date.
☐    Written Warning      Click here to enter a date.
☐    Final Warning         Click here to enter a date.
☒    Termination           3/4/2021
☐    Administrative Leave   Click here to enter a date.

### Issue: (Check all that apply)

☐    Attendance/Tardiness
☐    Performance
☒    Conduct
☒    Violation of Policy/Core Values
☐    Other (specify) Click here to enter text.

### Historical Information: What lead to the current situation? List previous dates and related incidents

July 2019: A hotline caller reported being offended by the original United States flag that was hung in David's cubicle, which some associate with this country's history of slavery. Leadership within the Facilities Department removed the flag. Eric Hoffman, VP for facilities spoke with David to advise why the flag was removed. The flag had been known to be displayed by white supremacy groups.

April / May 2020: A hotline report was filed regarding allegations of an altercation between David and another employee. A colleague reported David's aggressive communication regarding firearms, which prompted the coworker to attempt to contact the police. In the investigation, it was discovered that David had items posted on his bulletin board in his cubicle including a decal of a white rabbit which has been linked to a militia group representing white supremacy.

### Specific Details of Incident: Please reference all relevant documents and policies /policies

A hotline report was filed with Corporate Compliance regarding decals that David had in his space at Clark and Deming, which were offensive to the caller. In addition, it was reported that David made disparaging remarks against the LBTQ community. Upon investigation, it was discovered that on February 4, 2021, Phil Rominski had requested that the 2 decals be removed, one of the "Three Percenters", and one of QAnon. On February 5,

2021, the decals were not removed but covered by 2 additional decals, The Original Homeland Security and Don't Tread on Me, which has been associated with militia movements.  An employee also reported that David stated that individuals who identify as LGBTQ should not be permitted to serve in the military.

David was interviewed on February 18, 2021 by staff from Human Resources, Security and Corporate Compliance regarding the allegations.  David admitted that he did not remove the decals as instructed and instead covered them up with other decals of a similar nature that precipitated the initial complaint. David did recall that during a previous conversation it was explained to him that he could not post offensive symbols in his workspace.

Despite these prior discussions, David failed to consider the impact of his conduct on his coworkers and ignored a directive to remove the decals he posted.  His comment regarding military service of individuals who identify as LGBTQ does not comply with our non-discrimination policy.  He has, on numerous occasions, utilized work space to advocate for militia groups, which do not align with the Hospital's values.

Therefore, David's employment is being terminated effective immediately.


**List documents/attachments given:**

Click here to enter text.


**Describe expectations, action plan and/or next steps:**

Click here to enter text.


**Employee Comments:**




**Disciplinary Action may be contested through the Problem Resolution Process by contacting Human Resources (extension 73030 or hrbconsulting@luriechildrens.org) within 7 business days of issuance of the disciplinary action. Verbal disciplinary actions and/or any disciplinary actions issued during the 90-day Introductory Period cannot be contested).**

| Name (print) | Signature | Date |
|---|---|---|
| **Employee:**<br><br>**David Leffler** | (Signature acknowledges that this disciplinary action has been reviewed with me and does not necessarily indicate agreement). | 3/4/2021 |

| | | |
|---|---|---|
| **Issuing Manager:**<br><br>**Steve Barstatis** | | **3/4/2021** |
| **Witness:**<br>(2nd Department Leader if necessary)<br><br>**Phil Rominski** | | **3/4/2021** |

Original – Department File
Copy – Employee
Copy – HR File