IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID LEFFLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22 C 401 |
| ) | |
| ANN & ROBERT H. LURIE ) | Judge Joan H. Lefkow |
| CHILDREN'S HOSPITAL OF CHICAGO, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant Ann & Robert H. Lurie Children's Hospital of Chicago (Lurie Children's) moves to dismiss (dkt. 23) in its entirety plaintiff David Leffler's first amended complaint (dkt. 20) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

**BACKGROUND**

Most of the factual allegations in Leffler's amended complaint are identical to those in his original complaint, which the court summarized thoroughly in its prior dismissal order. *See Leffler* v. *Ann & Robert H. Lurie Children's Hosp. of Chi.*, No. 22 C 401, 2023 WL 2375069, at *1–3 (N.D. Ill. Mar. 6, 2023). The court therefore provides only a brief summary of the core allegations and focuses on how Leffler's amended complaint alters the landscape.

Leffler is approximately 46 years old, Caucasian, and heterosexual. (Dkt. 20 ¶ 2.) From January 2018 until he was terminated in March 2021, Leffler worked as a maintenance engineer at Lurie Children's. (*Id.* ¶¶ 4, 76.) In July 2019, Leffler was directed to remove a "Betsy Ross Flag" and other "patriotic decals" from his cubicle after a caller to a corporate compliance

1

hotline reported that they were offensive and that the flag was associated with slavery. (*Id.* ¶¶ 13–14.) Leffler believes the caller was "an African-American employee … who worked alongside Leffler." (Dkt. 20 ¶ 15.)

In April 2020, Leffler had a series of encounters with another employee, Jason Fullerton, who is a homosexual male. (Dkt. 20 ¶¶ 11–12, 16–31.) Leffler alleges that Fullerton eavesdropped on several conversations Leffler had with other co-workers and directed harassing and disparaging comments at Leffler. (*Id.* ¶¶ 16–31.) In response to an anonymous complaint made against Leffler—allegedly by Fullerton—which claimed that Leffler was abusing narcotics, was speaking "aggressively" about firearms, and had compiled a "kill list," Leffler was interviewed by Todd Larson.[1] (*Id.* ¶¶ 31–32.) Leffler denied the allegations and complained[2] that "he had been continually harassed" by both Fullerton and other employees who labeled him a "racist," a "white supremacist," and a "right-wing militia member."[3] (*Id.* ¶¶ 40–42.) The "interview concluded with no formal action taken against Leffler" or anyone else. (*Id.* ¶ 44.) Lurie Children's did not investigate Leffler's complaints. (*Id.* ¶ 45.)

During the summer of 2020, Lurie Children's maintained a check-in table where employees were screened for COVID-19. (Dkt. 20 ¶¶ 36–37.) In that area, Lurie Children's

---

[1] Leffler does not identify Larson's title in his complaint, but the court infers that Larson was employed by Lurie Children's and had some degree of supervisory authority over Leffler.

[2] Leffler states that he "continued to complain to Larson that he was being harassed by Fullerton … ." (Dkt. 20 ¶ 43.) Beyond his interview with Larson, Leffler does not identify any other conversation or communication in which he made a complaint. In his memorandum in opposition to defendant's motion to dismiss, however, Leffler locates his complaints to Larson as being made only during that interview: "During said interview, Leffler verbally reported that he was being harassed by Fullerton … and additionally reported that several similarly situated African American employees had been harassing him …. Leffler denied all the unfounded accusations, and no formal action was taken against him for the report." (Dkt. 24 at 6.)

[3] In his amended complaint, Leffler adds that many of the employees who harassed him "were African-American." (Dkt. 20 ¶ 41.) Leffler identifies three such employees by name. (*Id.*)

2

displayed an "LGBT Pride Flag" and provided "a basket of [Black Lives Matter] buttons for employees to take and wear at their discretion." (*Id.* ¶ 38.) Employees were also permitted to distribute "Black Lives Matter" stickers. (*Id.* ¶ 39.)

Around January 2021, Leffler "received a promotion and was transferred" to a different office. (Dkt. 20 ¶ 47.) Leffler claims that the position to which he was promoted "was one with a contentious application process, and [his] receipt of the position angered several other employees" who had competed for the position. (*Id.* ¶ 48.) According to Leffler, the employees who were "angered" by his promotion were also individuals who had harassed him during the previous spring and summer. (*Id.* ¶¶ 41, 48.)

In February 2021, following his promotion and transfer, Leffler displayed two "decals representing his political affiliations" in his private office. (Dkt. 20 ¶ 49.) Phil Rominski[4] ordered these decals removed "because [Rominski] believed them to be 'associated with militia groups and white supremacy' and labeled them 'offensive.'" (*Id.* ¶ 51.) Rather than remove the decals, Leffler "placed new decals over the decals" that Rominski had labeled "offensive." (*Id.* ¶¶ 68–69.) The new decals displayed "the 1775 Gadsden flag with the words 'Don't Tread on Me'" and "the language of the [Second] Amendment" with "the tagline 'The Original Homeland Security.'"[5] (*Id.* ¶ 52.)

About two weeks after Leffler put up the new decals, members of Lurie Children's Human Resources, Security, and Corporate Compliance interviewed him. (*Id.* ¶ 63.) Although

---

[4] Leffler does not identify Rominski's title in his complaint, but the court infers that Rominski was employed by Lurie Children's and had some degree of supervisory authority over Leffler.

[5] Leffler's amended complaint includes several paragraphs (dkt. 20 ¶¶ 53–55, 70–72) that further describe the Gadsden flag and the Second Amendment decal, asserting that the flag "is unrelated to any political affiliation of Leffler" and that both the Gadsden flag and the Second Amendment decal "derive[] from [Leffler's] previous service as a United States Marine." Leffler also asserts that he "had no ascertainable reason to believe" that these "images would be considered 'offensive.'" (*Id.* ¶ 55.)

Leffler had not in fact removed the decals as directed, he told those interviewing him that he had "removed the decals as demanded by Rominski and replaced them with more general patriotic stickers pertaining to his military service and patriotism." (*Id.* ¶¶ 64, 69.)

Shortly thereafter, on March 4, 2021, Leffler's employment with Lurie Children's was terminated. (*Id.* ¶¶ 65, 76.) In a notice of termination letter sent to Leffler, Lurie Children's referenced as "Historical Information" the hotline reports made against Leffler in the summer of 2019 and the spring of 2020. (Dkt. 20, Ex. D at 1.) In summarizing the "Specific Details of Incident[,]" the letter identified a hotline report and the investigation into the "offensive" decals and noted that the decals "were not removed" as directed but were instead "covered by [two] additional decals." (*Id.* at 1–2.) Among other particulars, the letter also noted that, despite "prior discussions" between Leffler and Lurie Children's staff, Leffler "failed to consider the impact of his conduct on his coworkers and ignored a directive to remove the decals he posted." (*Id.* at 2.)

In January 2022, Leffler filed this action against Lurie Children's, alleging violations of his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (Dkt. 1.) In May 2022, Lurie Children's moved to dismiss Leffler's original complaint under Federal Rule of Civil Procedure 12(b)(6) (dkt. 11), and this court granted that motion, dismissing the complaint without prejudice. *Leffler*, 2023 WL 2375069, at *8. Leffler then filed an amended complaint (dkt. 20), and Lurie Children's again moves to dismiss under Rule 12(b)(6). (Dkt. 23.)

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint to state a claim upon which relief may be granted. *See McReynolds* v. *Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 n.4 (2012). To withstand such a challenge, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*,

4

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Twombly*, 550 U.S. at 556. When ruling on a 12(b)(6) motion, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Hughes* v. *Northwestern Univ.*, 63 F.4th 615, 630 (7th Cir. 2023). The court may also consider "documents that are attached to the complaint [and] documents that are central to the complaint and referred to in it[.]" *Williamson* v. *Curran*, 714 F.3d 432, 436 (7th Cir. 2013). A complaint "need not allege each evidentiary element of a legal theory to survive a motion to dismiss." *Freeman* v. *Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) (citing *Swierkiewicz* v. *Sorema, N.A.*, 534 U.S. 506, 510–14 (2002)). But neither legal conclusions masquerading as factual allegations, *see Papasan* v. *Allain*, 478 U.S. 265, 286 (1986), nor "a formulaic recitation of the elements" of a claim, *Twombly*, 550 U.S. at 555, will suffice under Federal Rule of Civil Procedure 8(a)(2) ("A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief[.]").

## ANALYSIS

Leffler's amended complaint organizes his Title VII claims into four counts: (I) race discrimination; (II) hostile work environment based on race; (III) hostile work environment based on sexual orientation; and (IV) retaliation.[6]

---

[6] Leffler's original complaint (dkt. 1) asserted an additional count of sexual orientation discrimination that Leffler has not renewed in his amended complaint (dkt. 20).

I. **Count I: Race Discrimination**

Title VII makes it "an unlawful employment practice for an employer … to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a). Leffler's race discrimination claim sounds in disparate treatment. (Dkt. 26 at 8.) To bring a disparate treatment claim under Title VII, a plaintiff "must show that he belongs to a protected class and that he has suffered an adverse employment action due to his membership in that class." *West* v. *Radtke*, 48 F.4th 836, 848 (7th Cir. 2022). Put another way, the plaintiff's employer must have taken a "job-related employment action against him which was motivated by intentional discrimination." *Alamo* v. *Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). It is not enough that the plaintiff suffered "a mere inconvenience or an alteration in job responsibilities." *West*, 48 F.4th at 849 (quoting *Nichols* v. *S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007)). Rather, the job-related employment action must have effected "a materially adverse change in the terms and conditions of employment[.]" *Alamo*, 864 F.3d at 552 (quoting *Stockett* v. *Muncie Ind. Transit Sys.* 221 F.3d 997, 1001 (7th Cir. 2000)). Such actions include, as relevant here, "termination or … unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Reives* v. *Ill. State Police*, 29 F.4th 887, 894 (7th Cir. 2022) (quoting *Barton* v. *Zimmer*, 662 F.3d 448, 453–54 (7th Cir. 2011)).

This court's previous order dismissing Leffler's original complaint made clear that "a disparate treatment claim requires a showing that an *employer* took an adverse employment action against its employee[.]" *Leffler*, 2023 WL 2375069, at *4 (emphasis in original). Allegations that a co-worker "engaged in rude or harassing behavior are insufficient to state a

6

claim" under Title VII "without some additional basis for employer liability." *Id.* With these principles in mind, the court concluded that the original complaint "fail[ed] to set out any adverse employment action that might form the basis of a disparate treatment claim aside from [Leffler's] termination." *Id.*

Leffler's amended complaint has not cured this deficiency. Most of the factual allegations in the amended complaint speak to the alleged conduct of Leffler's co-workers, not of his employer. In fact, Leffler now explicitly acknowledges in his amended complaint that "no formal action [was] taken against" him following the April 2020 incidents. (Dkt. 20 ¶ 44.) Nor were any disciplinary actions, other than his termination, taken against Leffler during the entire course of his employment. (*Id.* ¶¶ 73–74.) To be sure, Leffler alleges that Lurie Children's investigated complaints against him but did not investigate complaints he made against his co-workers (*id.* ¶¶ 45–46), and under the right "surrounding circumstances" a failure to investigate can constitute an adverse employment action. *See Knox* v. *State of Ind.*, 93 F.3d 1327, 1334 (7th Cir. 1996) ("It is well established that an employer can be held liable under Title VII for … harassment by an employee's co-workers if the employer had actual or constructive knowledge of the harassment and failed to address the problem adequately."). But Leffler's own allegations preclude even a reasonable inference that the right "surrounding circumstances" existed here. Leffler alleges that his co-workers harassed him during the spring and summer of 2020 (dkt. 20 ¶¶ 16–44), but Leffler does not allege any harassment after he reported it at his interview with Larson. Any failure to investigate did not, therefore, result in any "unbearable changes in [Leffler's] job conditions," *Reives*, 29 F.4th at 894, and cannot serve as the adverse employment action necessary to sustain Leffler's race discrimination claim.

7

Nor can Leffler's termination serve that function. As this court previously noted, "Leffler was not terminated until March 2021[,]" *Leffler*, 2023 WL 2375069, at *5, long after his co-workers' alleged harassment ceased and long after Lurie Children's chose not to investigate Leffler's complaints. Such an absence of relatively close temporal proximity "does not permit the court to draw any reasonable inference that [Leffler's] termination was connected to his" race. *Id.* Leffler's amended complaint has not added any new allegations that would permit that inference now.

More critically, Leffler's amended complaint fails plausibly to allege that he was either harassed by his co-workers or terminated by his employer *because of his race*. As this court said when dismissing Leffler's original complaint, "Leffler asks the court to draw a connection between his racial identity (white) and the accusations that he displayed images associated with white supremacy. But white supremacy is a political ideology not intrinsic to any racial identity, and political speech is not a protected characteristic under Title VII." *Leffler*, 2023 WL 2375069, at *5 (citing 42 U.S.C. § 2000e-2(a)(2) (prohibiting discrimination based on "race, color, religion, sex, or national origin")). Leffler's amended complaint does not cure this pleading deficiency or otherwise allow the court to infer race-based discrimination. Leffler has added allegations that the co-workers who allegedly harassed or filed complaints against him were not white (dkt. 20 ¶¶ 15, 41–42, 50) and that non-white employees were "angered" when Leffler was promoted over them (*id.* ¶¶ 48, 50), but the complaint alleges only that these co-workers referred to Leffler as a "racist," a "white supremacist," and a "militia member," (*id.* ¶¶ 41–42) and not that they ever referred to his racial identity. The only race-based allegation in Leffler's amended complaint is, at best, conclusional: "Leffler's termination of employment was derived from [his employer's] prejudiced and discriminatory connection of Leffler's ethnicity, white, and what [his

8

employer] wrongly assumed to be Leffler's political beliefs." (*Id.* ¶ 77.) What was true of Leffler's original complaint is true of his amended one: "given the choice between the tenuous inference of racial discrimination and the 'obvious alternative explanation' that Lurie Children's took action against Leffler for displaying offensive messages on multiple occasions despite warnings not to do so, 'discrimination is not a plausible conclusion.'" *Leffler*, 2023 WL 2375069, at *5 (quoting *Iqbal*, 556 U.S. at 682).

In sum, Leffler has failed to allege plausibly that Lurie Children's took any adverse employment action against him that "was motivated by intentional discrimination." *See Alamo*, 864 F.3d at 552. Count I is therefore dismissed.

## II. Counts II and III: Hostile Work Environment Based on Race and Sexual Orientation

Counts II and III of Leffler's amended complaint allege that Lurie Children's subjected Leffler to a hostile work environment on the basis of his race and sexual orientation, respectively, in violation of 42 U.S.C. § 2000e-2(a). To state a hostile work environment claim under Title VII, a complaint must plausibly allege that "(1) the work environment was both subjectively and objectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Hambrick* v. *Kijakazi*, 79 F.4th 835, 842 (7th Cir. 2023) (quoting *Trahanas* v. *Northwestern Univ.*, 64 F.4th 842, 853 (7th Cir. 2023)). With respect to the first and third elements, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Id.* at 842–43 (quoting *Alexander* v. *Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014)). Where, as here, the harassers are co-workers,

9

"the employer is liable only if it was negligent in controlling working conditions." *Trahanas*, 64 F.4th at 853 (quoting *Vance* v. *Ball State Univ.*, 570 U.S. 421, 424 (2013)).

In dismissing Leffler's original complaint, this court noted first that it could not "draw any reasonable inference that a reasonable person would perceive [defendant's] choices"—to display the Pride Flag, make Black Lives Matter buttons available, and allow employees to distribute Black Lives Matter stickers—"as harassment of Leffler individually." *Leffler*, 2023 WL 2375069, at *6. Leffler's amended complaint makes no new allegations that would allow that inference now.

Next, this court noted that Leffler's original complaint pointed to only a single comment (by Fullerton) "that was sexual in nature and could plausibly be interpreted as connected to Leffler's sexual orientation." *Leffler*, 2023 WL 2375069, at *6. Such an isolated comment, even if it "engenders offensive feelings in an employee[,]" generally "does not sufficiently affect the conditions of employment to implicate Title VII." *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). *See also Ford* v. *Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009). To be sure, a single comment or epithet may be so appalling that it may "quickly alter the conditions of employment and create an abusive working environment," particularly when levied by a supervisor toward a subordinate, *Robinson* v. *Perales*, 894 F.3d 818, 829–30 (7th Cir. 2018) (cleaned up), but the complaint here does not allege the use of such a discriminatory epithet and alleges comments made only by co-workers and not by a supervisor. *See also Gates* v. *Bd. of Ed. of the City of Chi.*, 916 F.3d 631, 638–39 (7th Cir. 2019). In its prior order, the court suggested to Leffler that his claim might have succeeded past a motion to dismiss if he had provided additional factual allegations that might help demonstrate a plausible basis for relief, *see Leffler*, 2023 WL 2375069, at *6, but Leffler's amended complaint has not cured this deficiency, adding

10

nothing that would give rise to reasonable inference of actionable harassment on the basis of sexual orientation.

Nor does the complaint provide any factual allegations of race-based harassment. Leffler continues to conflate being called a "racist," a "right wing militia member," and a "white supremacist" with being targeted because of his racial identity. The court reiterates that political or ideological opinions are not intrinsic to racial identities. *See Leffler*, 2023 WL 2375069, at *5–6. Harassment based on one's opinion or viewpoint, whether perceived or actual,[7] is not actionable under Title VII. *Id.* For these reasons, defendant's motion is granted with respect to Counts II and III.[8]

### III. Count IV: Retaliation

Title VII prohibits an employer from retaliating against any employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To sufficiently plead a retaliation claim under Title VII, a plaintiff must plausibly allege that "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lesiv* v. *Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022) (quoting *Lewis* v. *Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018)). Leffler has adequately pleaded an adverse employment action, his termination,

---

[7] Leffler's amended complaint (dkt. 20) and memorandum (dkt. 26) in response to the motion to dismiss repeatedly assert that Leffler is not, in fact, a "racist," a "white supremacist," or a "right-wing militia member" (dkt. 20 ¶¶ 42, 70, 77, 79), but whether the alleged comments or epithets were accurate, while perhaps of importance to defamation law, is not germane to Title VII's prohibitions.

[8] Lurie Children's also moves to dismiss Counts II and III as untimely. (Dkt. 24 at 7–8.) Because the court concludes that Leffler's amended complaint fails to state any hostile work environment claim, the court declines to reach the issue of timeliness.

and for the purpose of deciding this motion, the court infers—as it did in dismissing Leffler's original complaint—that Leffler engaged in protected activity when he reported harassment at the hands of his co-workers. *Leffler*, 2023 WL 2375069, at *8. As with defendant's first motion to dismiss, therefore, the dispositive question is whether Leffler has plausibly alleged "a causal link" between his reporting and his termination. He has not.

With respect to this "causal link," Leffler's original and amended complaints are virtually identical. Lefler reported his co-workers' alleged harassment sometime during the spring or summer of 2020. (Dkt. 1 ¶¶ 15–42; dkt. 20 ¶¶ 16–44.) Nearly a year later, in March 2021, Leffler was terminated. (Dkt. 1 ¶ 50; dkt. 20 ¶ 76.) Without more, these events simply lack the temporal proximity necessary to establish a connection between Leffler's protected activity and his employer's adverse action. *See Carlson* v. *CSX Transp., Inc.*, 758 F.3d 819, 828–29 (7th Cir. 2014) ("[N]o bright-line timing rule can be used to decide whether a retaliation claim is plausible[,]" but "[e]ven intervals shorter than four months are unlikely, standing alone, to establish the causation element of a retaliation claim."). Where Leffler's complaints occurred during the spring and summer of 2020, and Leffler was later promoted and worked for several months in the new position, the court cannot plausibly infer that Leffler's protected activity of a year earlier was the reason for his termination.

Additional allegations might help make that connection, but Leffler's amended complaint does not provide them. Instead of building a bridge from the protected activity to the termination, Leffler argues that he never would have been terminated had Lurie Children's investigated his complaints and realized that the complaints against him were "entirely unfounded." (Dkt. 26 at 16.) But this argument treats defendant's alleged failure to investigate as part and parcel of Leffler's own protected activity. To show retaliation, Leffler must plausibly allege that his

12

termination was caused by his reporting, not by his employer's failure to investigate that reporting.

Due to the relatively long time between Leffler's protected activity and his termination, and because Leffler has not shored up that temporal remoteness with supporting factual allegations, Leffler has not plausibly stated his retaliation claim. Count IV must be dismissed.

## **CONCLUSION AND ORDER**

In sum, Leffler's amended complaint fails to plausibly allege race discrimination (Count I), hostile work environment based on race and sexual orientation (Counts II and III), and retaliation (Count IV). The motion to dismiss (dkt. 23) is therefore granted, and Leffler's amended complaint (dkt. 20) is dismissed with prejudice. Judgment is entered for Lurie Children's. The Clerk shall enter final judgment in favor of Lurie Children's.

Date: October 4, 2023

_____
U.S. District Judge Joan H. Lefkow